BRADBURN MOTORS COMPANY *vs.* SAM MOVERMAN.

JUNE 26, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of the case in assumpsit which was heard in the superior court by a justice thereof sitting without a jury. · He rendered a decision for the plaintiff in the sum of $755.64. The defendant thereupon duly prosecuted his bill of exceptions to this court containing an exception to such decision, and an exception to a ruling of the trial justice sustaining the plaintiff's objection to a question asked a witness for the plaintiff by the defendant.

It appeared from the evidence that the plaintiff was a corporation in Providence engaged in the business of selling, servicing and repairing automobiles. The defendant was a dealer in second-hand automobiles in that city. Prior to the occurrence involved herein the defendant had on several occasions come in contact with persons who were interested in the make of automobile for which the plaintiff had an agency. In this situation the defendant would take the matter up with a certain salesman employed by the plaintiff, and, if a sale materialized, the salesman would then, from his own commission, pay the defendant a sum agreed upon by them. The defendant was not an employee of the plaintiff, nor did the latter ever pay the defendant any commission under the above circumstances. At times the defendant had purchased new automobiles from the plaintiff, part of the consideration for which were second-hand cars.

On the morning of February 7, 1936, at which time the salesman in question was no longer in the plaintiff's employ, the defendant went to the plaintiff's general manager and stated to him in substance that he, the defendant, desired the use of a new automobile of the make in question, as he wished to demonstrate it to a prospective customer who was then with the defendant. Apparently nothing was said as to how the latter was to be remunerated if a sale took place. After some discussion the plaintiff's manager permitted the defendant to drive away a demonstration car of the current model. The defendant testified that he told the manager that the car would not be back for a couple of days, and that the manager did not object to this arrangement nor ask where the car was being taken. The manager testified that the defendant stated he wished to keep the car overnight so that he could prove how well it started in the morning, it being winter, and that after some hesitation, as the weather was very bad for demonstration purposes, the manager let him take the car on that understanding.

The evidence then showed that the defendant and his companion, who did not testify, drove the car in the direction of New York City, there being testimony from which it might be inferred that they intended going to that place. While in Madison, Connecticut, on the afternoon of February 7, the car was in an accident and was very badly damaged. The defendant returned to Providence that night and called the plaintiff's manager on the telephone the following morning, informing him of what had happened. A meeting at the plaintiff's service station was at once arranged. Here the defendant was accompanied by his attorney, and a discussion was had about bringing the car to Providence from Connecticut and about other matters connected with the accident. At this time the defendant paid the plaintiff $11.60, which covered certain storage charges in Connecticut and a telephone call, and the plaintiff's man-

ager arranged to send to that state for the car which was soon after brought back to Providence.

At the above meeting a repair order was signed by the defendant. The evidence on this point is conflicting. The plaintiff's evidence tended to show that at that time the defendant signed only the first sheet of the repair order which was in blank except for items totaling $11.60, an item of towing charges and a statement "repairs due to accident", opposite which was no figure. About three days later, after the car had been returned to the plaintiff's place of business, it was examined by the plaintiff's service manager, who then entered on the said first sheet certain charges connected with said return, and on that sheet and several other sheets all the items in detail covering the necessary repairs to the car, together with their respective costs. The defendant then signed all the remaining sheets.

On the other hand, the defendant's testimony tended to show that all the sheets were signed by him at the meeting on February 8 in blank, except possibly as to the $11.60, and that the repair items were filled in later when he was not present. Each sheet shows the defendant's signature and address at its top, and his signature at the bottom of each sheet following the words "This work authorized by". The defendant does not dispute these signatures.

His explanation of the matter, corroborated by the testimony of his attorney, was that the plaintiff's manager told him that the signing of the repair order was a mere formality required by the rules of the plaintiff's office and service station for record purposes, and that such signing would assist in adjusting the insurance on the car. The defendant and his attorney testified that the latter advised the defendant that he could sign the repair order, and that the defendant was not asked to pay for the repairs on the car and at no time promised to do so.

However, the plaintiff's witnesses, its general manager and service station manager, gave evidence that the defendant on February 8 promised to pay for the repairs on the car, and signed a repair order in pursuance of that understanding. The general manager also testified in substance that he did not agree to send to Connecticut for the car until after the defendant had signed the repair order, and that many times after the car had been repaired the defendant had promised to pay the repair bill.

On this conflicting evidence the trial justice concluded, in our judgment properly, that he was called upon to decide the case on the narrow question of whether or not the defendant had agreed to pay the plaintiff a specified amount for making certain repairs to the car. The trial justice determined that question in favor of the plaintiff, finding specifically that the defendant had so agreed. On the theory upon which the case was tried and decided, the exact relationship existing between the plaintiff and the defendant growing out of the latter's use of the plaintiff's car did not have to be determined.

In coming to his decision the trial justice obviously relied to a considerable extent upon the testimony of the plaintiff's service manager who gave evidence that the defendant signed all the repair order sheets, other than the first one, after all the repair items with their respective costs had been written out on said sheets, and that he signed with full knowledge of the contents and amount of the order. In reply to questions from the court concerning these sheets this witness stated: "Q. Were those figures in blue pencil on the sheet when it was signed by Sam Moverman? A. No, sir. Q. That was totalled later on? A. Yes, sir. Q. But all the other figures were there? A. Yes, sir. Q. Did Mr. Moverman make any comment on the size of the repair bill? A. Yes, sir, before he signed it. Q. What did he say? A. He said, 'Gosh, that's quite high', but he signed it later.

Q. And then after making that comment signed the order?
A. Yes, Your Honor."

The trial justice also made certain other findings of fact based, to some extent, on inferences drawn by him from the alleged conduct of the parties and from all the facts and circumstances of the case as disclosed by the conflicting evidence. These findings, in his opinion, furnished the explanation of why the defendant, in the presence of his attorney, signed the repair order. The trial justice did not accept as correct the defendant's contention that such signing was merely a formality.

In support of his position that the decision of the trial justice was against the evidence, the defendant contends that it appears from the transcript of testimony that the trial justice showed that he was prejudiced against the defendant by making certain references to the fact that the latter had driven the automobile a considerable distance while demonstrating it, and also had consulted his attorney soon after the accident and had taken said attorney to the meeting with the plaintiff's employees on February 8. We have given these matters consideration and do not find, from the transcript, that the trial justice was prejudiced against the defendant, and hence the defendant takes nothing by this contention.

The defendant also urges that the plaintiff's repair bill contains improper items and charges, and that the decision of the trial justice is erroneous in awarding the plaintiff the full amount of said bill. When considered in relation to the cost and value of the car in question and the price at which it was sold after it was repaired, the amount of the plaintiff's bill is large. However, under the evidence in this case the size of the plaintiff's repair bill was not in issue. The plaintiff maintained that the defendant had agreed to pay the particular bill in dispute, knowing its amount. The defendant's contention was that he had not agreed to pay

for the repairs on the car at all. The question, therefore, of the reasonableness of the bill, or of the propriety of any of its items or charges was not before the court. In fact, the defendant introduced no evidence to prove what would have been the reasonable cost of repairing the car. In our opinion, therefore, on the evidence appearing herein, the defendant's claim that the court awarded the plaintiff excessive damages is without merit.

In deciding this case it was necessary for the trial justice to pass upon the weight of the evidence and the credibility of the witnesses. As an aid, he had the advantage, not afforded us, of seeing and hearing such witnesses testify. We have examined the conflicting evidence in this case and, after so doing, cannot say that the decision of the trial justice was clearly wrong. Such being the case, under our well-established rule we will not disturb his decision. The defendant's exception to such decision is overruled.

In seeking to support his contention that the signing of the repair order by him was merely for the purpose of complying with the plaintiff's rules and regulations in connection with the keeping of its records, the defendant, in cross-examination of the plaintiff's general manager, asked the following question, the plaintiff's objection to which was sustained by the trial justice, which ruling is the ground of the defendant's second exception: "Q. Just one answer you gave towards the end of your testimony I would like to be clear about, Mr. Donnelly. Suppose that you personally were driving one of the company cars and a truck backed into you and damaged the car, what would the red tape or procedure be at the service station with respect to making those repairs?"

In our opinion the ruling was correct. The question was not framed to elicit from the witness information concerning the general conduct of the plaintiff's business, or the regular and ordinary usage followed by the plaintiff in con-

nection with repairs or repair orders in the event one of its cars was damaged. The question was based on the assumption that the car to be repaired was, at the time of the damage, in the control of the plaintiff's general manager. In the instant case the plaintiff's car, when damaged, was not under the control of any employee of the plaintiff company, whatever the defendant's relation to the plaintiff may have been at the time. The question, therefore, was too limited in its scope, and was not material to the issue involved in the instant case. The defendant's exception under consideration is overruled.

All the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment for the plaintiff on the decision.

*Tillinghast, Morrissey & Flynn, M. Walter Flynn, John M. Dunn,* for plaintiff.

*Edward Winsor, Edwards & Angell,* for defendant.